# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| DANIEL CASTAGNA, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) CAUSE NO.: 3:15-CV-249-TLS |
| NEWMAR CORPORATION, *et al.*, | ) |
| Defendants. | ) |

## OPINION AND ORDER

The Plaintiff, Daniel Castagna, has filed a lawsuit against Defendants Newmar Corporation and Magnum Energy, Inc., alleging claims in relation to the sale of a recreational vehicle ("RV"). This matter is now before the Court on a Motion to Strike the Amended Complaint [ECF No. 40], filed by Newmar; and a Motion to Dismiss the Amended Complaint [ECF No. 43], filed by Magnum.[1]

## BACKGROUND

The Plaintiff filed a Complaint [ECF No. 1] against Newmar (an Indiana corporation) and Magnum (a Washington corporation) on June 11, 2015. The Plaintiff asserts that in July 2013, he purchased a 2014 Newmar Mountain Aire RV from North Trail RV, a non-party dealership in Florida. According to the Plaintiff, the RV "spent more than half of its first nine months of ownership out of service due to defects and malfunctions," culminating in a "major fire incident that was the result of a defect in the R[V] and/or its components." (Am Compl ¶ 1.) The Plaintiff identifies one such component as an inverter provided by Magnum, a supplier for

---

[1] Also pending before the Court is a Motion to Dismiss [ECF No. 16], which was filed by Magnum prior to the filing of the Plaintiff's Amended Complaint [ECF No. 34].

Newmar.[2]

In his original Complaint, the Plaintiff lodged three claims against each Defendant, including a breach of warranty (Count I); a violation of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (Count II); and a violation(s) of the Indiana Deceptive Consumer Sales Act and/or the Florida Deceptive and Unfair Trade Practices Act (Count III). The Plaintiff also attached three exhibits to the original Complaint, including the Purchase Contract [ECF No. 1-1], the Newmar Limited Warranty [ECF No. 1-2], and the Magnum Limited Warranty [ECF No. 1-3].

On July 2, 2015, Newmar filed an Answer [ECF No. 5], denying liability and alleging cross-claims against Magnum for indemnity and breach of warranty/breach of contract. On September 8, 2015, Magnum filed an Answer [ECF No. 15], along with a Motion to Dismiss the Complaint [ECF No. 16] and a Memorandum in Support [ECF No. 17].[3] However, on October 30, 2015, the Plaintiff filed an Amended Complaint [ECF No. 34], wherein the Plaintiff omits Counts I and II against Magnum. The Plaintiff did not attach any exhibits to the Amended Complaint.

On November 20, 2015, Newmar filed a Motion to Strike the Amended Complaint [ECF No. 40] pursuant to Federal Rule of Civil Procedure 12(f); along with a Memorandum in Support

---

[2] In addition to the inverter, the Plaintiff alleges the following defects in the subject RV: the air conditioning system, the check engine light warning system, the slide out system, interior cabinets, the satellite system, the driver seat control system, the wind sensor, the bathroom flush control panel, the refrigerator, floor tiles, the DVD player, the electrical system, pantry door, bathroom drawer, other drawers, water overflow system, power day/night shade system, the screen door, and the subwoofer. (Am. Compl. ¶ 44.)

[3] Newmar filed a Limited Response to Magnum's Motion to Dismiss [ECF No. 30], arguing that, to the extent the Motion to Dismiss is directed at Newmar's cross-claims against Magnum, the motion should be denied.

[ECF No. 41] and five exhibits, including the Purchase Contract [ECF No. 41-1], the Newmar Limited Warranty [ECF No. 41-2], the Owner's Registration [ECF No. 41-3], the Notice of Motor Coach Origin & Fire Investigation [ECF No. 41-4], and a Letter from Plaintiff's Counsel regarding a proposed settlement [ECF No. 41-5].[4] On the same day, Magnum filed a Motion to Dismiss the Amended Complaint [ECF No. 43] pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6); along with a Memorandum in Support [ECF No. 44] and three exhibits, including the Purchase Contract [ECF No. 44-1], the Notice of Motor Coach Origin & Fire Investigation [ECF No. 44-2], and the Letter from Plaintiff's Counsel regarding a proposed settlement [ECF No. 44-3]. The Plaintiff filed Responses [ECF Nos. 49, 50] to both motions on January 11, 2016;[5] and Magnum filed a Reply [ECF No. 51] on January 19, 2016. This matter is now fully briefed and ripe for ruling.

**PRELIMINARY MATTERS**

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a "court should freely give leave" to amend a pleading "when justice so requires." The Supreme Court has explained the meaning of "freely given" as used in Rule 15(a) by stating:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave

---

[4] Newmar filed an Answer [ECF No. 42] to the Amended Complaint in the event the Court denies the Motion to Strike. The Answer to the Amended Complaint includes cross-claims against Magnum for indemnity and breach of warranty/breach of contract.

[5] Attached to the Response [ECF No. 49] to Magnum's Motion to Dismiss is the Plaintiff's sworn affidavit [ECF No. 49-1], the Newmar Limited Warranty [ECF No. 49-2], and the Magnum Limited Warranty [ECF No. 49-3].

sought should, as the rules require, be 'freely given.' *Foman v. Davis*, 371 U.S. 178, 182 (1962). Thus, while leave to amend should be freely given when justice so requires, a court should not allow a plaintiff to amend his complaint when to do so would be futile. *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir. 1993) (denying amendments that would not have withstood a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted); Wright and Miller, Federal Practice and Procedure, § 1487 ("Although several courts have held that the substantive merits of a claim or defense should not be considered on a motion to amend, if the proposed claim clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend.").

As noted above, Newmar seeks to strike the Plaintiff's Amended Complaint under Rule 12(f), which provides that the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f); *see Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (noting that the court "has considerable discretion in striking" such matters). When a party moves to strike an amended pleading on the basis of futility—which Newmar has done here—the standard of review is the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6). *Fifth Third Bank v. Double Tree Lake Estates, LLC*, Cause No. 2:11–CV–233–PPS–PRC, 2013 WL 587889, at *5 (N.D. Ind. Feb. 12, 2013). As a result, the Court will construe Newmar's Motion to Strike as a Motion to Dismiss under Rule 12(b)(6).

## DISCUSSION

I.  **Motion to Dismiss for Improper Venue**

First, the Court must address Magnum's request for the dismissal of the Plaintiff's Amended Complaint under Rule 12(b)(3), which allows a party to move to dismiss an action when the action is not filed in a proper venue. Fed. R. Civ. P. 12(b)(3). Although a plaintiff has the burden of showing that venue is proper, *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969), all factual conflicts are resolved in favor of the plaintiff, and the court may draw reasonable inferences from those facts, *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001). When ruling on a motion to dismiss for improper venue, a district court may examine facts outside the complaint without converting the motion to a motion for summary judgment. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

To support dismissal, Magnum points to the forum selection clause contained in the Plaintiff's Purchase Contract with North Trail RV, which reads as follows:

> 17. APPLICABLE LAW, VENUE AND ATTORNEY'S FEES. All negotiations and discussions between Purchaser and dealer, this Contract, and this sale of goods are governed by Florida law. Any actions of any find [sic] relating to this sale and these goods, including but not limited to lawsuits including Dealer as a party, *must be filed exclusively in Fort Meyers* [sic], *Florida*. In such action or lawsuit, the prevailing party shall be entitled to recover its attorneys fees' against the other party.

Def.'s Ex. A., ECF No. 44-1 (emphasis added). In opposition to Magnum's Motion, the Plaintiff argues that venue is proper in the Northern District of Indiana because (1) Magnum was not a party to the Purchase Contract; (2) the forum selection clause contained in the Purchase Contract conflicts with the forum selection clause contained in Newmar's Limited Warranty, which provides as follows:

> **Purchaser and dealer further agree the courts (state or federal) located in the State of Indiana have exclusive jurisdiction to resolve any dispute based on this warranty, any implied warranty, or any alleged warranty breach, as well as any claim or cause filed in conjunction with a breach of warranty claim.**

Pl.'s Ex. 2, ECF No. 49-2; and (3) enforcement of the forum selection clause in the Purchase Contract would be unreasonable.

As an initial matter, although Magnum styled its motion as one under Rule 12(b)(3), the question as to whether venue is improper is governed by 28 U.S.C. § 1391. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 134 S.Ct. 568, 580 (2013) (holding that "Rule 12(b)(3) [is] not [a] proper mechanism[] to enforce a forum selection clause"). Section 1391 provides that venue is proper in "(1) a judicial district in which any defendant resides, if all defendants" reside in the same State, or "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," or "(3) if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." § 1391(b). A corporate defendant is deemed to reside "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2). None of the parties dispute that venue is proper under § 1391.

Notwithstanding, a forum selection clause may still be enforced under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See*

*Atl. Marine*, 134 S.Ct. at 579.[6] And assuming the parties have agreed to a valid forum selection clause, a district court "should ordinarily transfer the case to the forum specified in that clause." *Id.* at 581 (noting that a "valid forum selection clause should be given controlling weight in all but the most exceptional cases.") (internal quotation marks, brackets, and citation omitted).

The Plaintiff argues, in essence, that the Court need not engage in the § 1404(a) analysis because Magnum, as a non-signatory to the Purchase Contract between the Plaintiff and North Trail RV, should not be permitted to enforce the forum selection clause.

The Seventh Circuit has held that a non-signatory may enforce a forum selection clause against a signatory, so long as the non-signatory is "closely related" to the suit. *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 439 (7th Cir. 2012); *see also Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgt. Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004). Although this is a vague standard, the analysis is guided by the principles of "affiliation" and "mutuality." *Adams*, 702 F.3d at 439. "Affiliation means that the non-signatory shares a corporate relationship with a signatory, such as two corporate affiliates or . . . a parent and its subsidiary. Mutuality is the principle that if a signatory can enforce the forum selection clause against a non-signatory, then the non-signatory should be allowed to do the same." *United Airlines, Inc. v. Zaman*, —F. Supp. 3d—, 2015 WL 2011720, at *10 (N.D. Ill. Apr. 30, 2015) (citing *Adams*, 702 F.3d at 439, 441).

For example, in *Frietsch v. Refco, Inc.*, the court found that a commodities broker was "closely related" to the signatories to a forum selection clause because the signatories were promoters and trustees entirely under the broker's control. 56 F.3d 825, 828 (7th Cir. 1995). The

---

[6]Or, in the case of a forum selection clause that points to a state or foreign forum, a forum selection clause may be enforced through the doctrine of *forum non conveniens*. *Atl. Marine*, 134 S.Ct. at 580 (noting that § 404(a) is "merely a codification of the doctrine of *forum non conveniens*.")

court noted that the plaintiffs could have enforced the forum selection clause against the broker, and consequently, "mutuality requires that [the broker] be allowed to invoke the clause. Otherwise the plaintiffs would have a choice of venues but [the broker] would not, and there is no reason for such an asymmetry of procedural choices." *Id.* Another illustrative case is *Buffet Crampon S.A.S. v. Schreiber & Kenilwerth*, where a dispute arose after two international manufacturers of musical instruments (i.e., Buffett and Schrieber) entered into an agreement that set forth the terms under which Schrieber would manufacture and supply instruments to Buffet for a period of three years. Cause No. 3:09–CV–347RM, 2009 WL 3675807, at *1–2 (N.D. Ind. Nov. 2, 2009). Gemstone, the exclusive distributor of Schrieber's musical instruments, was a non-signatory to the agreement, but it sought to enforce the agreement's forum selection clause. Relying on the principle of mutuality, the court noted that, "[n]othing suggests that Gemstone was even aware of [the Agreement] or the extent of Buffet and Schreiber's relationship," and therefore, "[t]he mutuality and forseeability requirements are absent." *Id.* at *11.[7]

After reviewing the relevant case law and the record presented, the Court finds that a forum transfer is inappropriate here. Although Magnum, as a supplier to Newmar, presumably benefits (albeit indirectly) from the Sales Contract between the Plaintiff and North Trail RV, nothing in the record suggests that Magnum was affiliated with North Trail RV or even aware of

---

[7]It is worth noting that other courts have applied the doctrine of equitable estoppel when a non-signatory seeks to enforce a forum selection clause against a signatory. *See, e.g., Organ v. Byron*, 434 F. Supp. 2d 539, 542 (N.D. Ill. 2005) ("*American Patriot* suggests a different analysis is required in these situations, *i.e.*, when a non-signatory seeks to benefit from a forum selection clause to which the signatory agreed to be bound. Though not explicitly stated as such in *American Patriot*, the analysis could be considered a form of equitable estoppel."); *Sparks Tune-Up Centers, Inc. v. Strong*, No. 92 C 5902, 1994 WL 188211, at *5 (N.D. Ill. May 12, 1994) ("The binding thread in cases which hold that a non-signatory party should benefit from and be subject to a forum selection clause is an overriding concern to prevent a contracting party from escaping contractual obligations which he bargained for and/or agreed upon.") (internal quotation marks and citation omitted).

the Sales Contract at issue. Nor does the record suggest that the Plaintiff filed this lawsuit in Indiana to "escap[e] contractual obligations which he bargained for and/or agreed upon." *Sparks*, 1994 WL 188211, at *5. In fact, Newmar's Limited Warranty provides that the "[p]urchaser and dealer . . . agree the courts (state or federal) located in the *State of Indiana* have exclusive jurisdiction to resolve any dispute based on this warranty . . . *as well as any claim or cause filed in conjunction with a breach of warranty claim*." (Pl.'s Ex. 2, ECF No. 49-2) (emphasis added).) For these reasons, the Court is without a sufficient basis, in either law or equity, to transfer this case. Magnum's request for a venue transfer is denied.

## II. Motions to Dismiss for Failure to State a Claim

Next, the Court will address Newmar and Magnum's separate motions for dismissal for failure to state a claim. Newmar seeks to dismiss the Plaintiff's claims for breach of implied warranty; and both Defendants seek to dismiss the Plaintiff's claims under the Indiana Deceptive Consumer Sales Act and/or the Florida Deceptive and Unfair Trade Practices Act.

Pursuant to Rule 12(b)(6), the court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Courts generally must

9

confine their inquiry to the factual allegations set forth within the operative complaint. *Rosenblum v. Travelbyus.com*, 299 F.3d 657, 661 (7th Cir. 2002). However, in the Seventh Circuit, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings," and may be considered on a motion to dismiss, "if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

### A. Breach of Implied Warranty

In Counts I and II of the Amended Complaint, the Plaintiff alleges, in part, that Newmar breached an implied warranty under state law (Count I) and the Magnuson-Moss Warranty Act ("MMWA") (Count II), 15 U.S.C. § 2301, *et seq.* Because the MMWA permits a suit for breach of an implied warranty "arising under State law," § 2301(7), both implied warranty claims must be analyzed under the applicable state law. *See Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) ("[F]or all practical purposes, the MMWA operates as a gloss on the [plaintiffs'] state law breach of warranty claims.").[8]

---

[8]"A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits," *Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) and *Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994)), including the state's conflict rules, *Land*, 272 F.3d at 516. Although the parties' briefing indicates that the Court may apply either Indiana or Florida law due to the existence of a conflict, *compare Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005) (finding that vertical privity of contract (i.e., privity between a consumer and a manufacturer) is not required to maintain an action for breach of an implied warranty) *with Powers v. Lazy Days RV Center, Inc.*, No. 8:05-CV-1542T17EAJ, 2006 WL 373011, at *2 (M.D. Fla. Feb. 16, 2006) ("Under Florida law, to recover for breach of implied warranty, the plaintiff must be in privity of contract with the defendant"), the briefing contains no analysis as to the application of Indiana's Choice of Law rules. *See Eby v. York-Division, Borg-Warner*, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983) (applying rule the "most intimate contacts" test for a contract-based action).

Based on the pleadings, the Court cannot, at this juncture, determine whether Indiana or Florida law applies. However, because the parties provided minimal discussion as to the application of Florida law—and instead, focused their attention on the application of Indiana law—the Court will assume, for

Because privity of contract is not required to maintain an action for breach of implied warranty under Indiana law, *Hyundai*, 822 N.E.2d at 959, Newmar seeks dismissal by pointing to the Purchase Contract between the Plaintiff and North Trail RV, which contains an express disclaimer of express or implied warranties.[9] In light of this disclaimer, Newmar contends that the Plaintiff is "estopped" from raising an implied warranty claim. (Newmar Br. 5 (arguing that Newmar has "the right to rely on [North Trail RV's] disposal of such claims.").)

As noted by the Plaintiff, the MMWA—which serves as a gloss on the Plaintiff's breach of warranty claims under Indiana law—prohibits suppliers from disclaiming or modifying any implied warranty to a consumer, except that the duration of an implied warranty may be limited for a reasonable period of time and such limitation must be "conscionable" and "set forth in clear and unmistakable language and prominently displayed on the face of the warranty." 15 U.S.C. § 2308(a) ("No supplier may disclaim or modify (except as provided in subsection (b) of this section) any implied warranty to a consumer with respect to such consumer product if . . . such

---

purposes of this order, that Indiana law applies.

[9]The disclaimer states, in relevant part:

SELLER, NORTHTRAIL RV MAKES NO GUARANTEE OR WARRANTY, EXPRESS OR IMPLIED, AND HEREBY DISCLAIMS AND EXCLUDES THE IMPLIED WARRANTY OF MERCHANTABILITY AND THE IMPLIED WARRANTY OF FITNESS FOR A PRACTICAL PURPOSE FROM THIS SALE TRANSACTION AND SHALL NOT APPLY TO THIS VEHICLE. BUYER UNDERSTANDS AND AGREES THAT NORTH TRAIL RV MAKES NO WARRANTY ON THIS VEHICLE AND THAT ANY PRE-DELIVERY INSPECTION OR SERVICE PERFORMED DOES NOT CREATE ANY WARRANTY OF ANY TYPE, EXPRESS OR IMPLIED . . . I UNDERSTAND AND AGREE THAT THE MANUFACTURER(S) LIMITED WRITTEN WARRANTY(S) ON THIS VEHICLE, IF ANY, CONTAINS AND CONSTITUTES MY EXCLUSIVE AND SOLE REMEDY FOR ANY PROBLEMS OR DEFECTS THIS VEHICLE MIGHT CONTAIN.

(Def.'s Ex. A. ¶ 7, ECF No. 41-1.)

supplier makes any written warranty to the consumer with respect to such consumer product."); § 2308(b) ("[I]mplied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty."). Thus, because Newmar provided the Plaintiff with a written warranty, *see* Am. Compl. ¶ 38, Def.'s Ex. B., ECF No. 41-2, the MMWA effectively prohibits Newmar from disclaiming an implied warranty during any time period for which the written warranty was operational. Moreover, a review of the disclaimer in the Sales Contract between the Plaintiff and North Trail RV reveals language that fails to clearly indicate whether the disclaimer extends beyond North Trail RV. As such, the Court is not convinced that Newmar should be permitted to rely on this disclaimer. For these reasons, Newmar's request to dismiss the Plaintiff's breach of implied warranty claim is denied.

**B.      Indiana Deceptive Consumer Sales Act Claim**

In Count III, the Plaintiff alleges that both Newmar and Magnum violated Indiana's Deceptive Consumer Sales Act (IDCSA), Ind. Code § 24-5-0.5-1 *et seq.*, a remedial statute that must be "'liberally construed and applied to promote its purposes and policies' of protecting consumers from deceptive or unconscionable sales practices." *Kesling v. Hubler Nissan*, 997 N.E.2d 327, 332 (Ind. 2013) (quoting § 24-5-0.5-1). Pursuant to the IDCSA, a supplier[10] commits a deceptive act when it makes certain representations "as to the subject matter of a

---

[10]A "supplier" is defined, in relevant part, as "[a] seller, lessor, assignor, or other person who regularly engages in or solicits consumer transactions, including soliciting a consumer transaction by using a telephone facsimile machine to transmit an unsolicited advertisement. The term includes a manufacturer, wholesaler, or retailer, whether or not the person deals directly with the consumer." Ind. Code § 24-5-0.5-2(a)(3)(A).

consumer transaction, which can be made orally, in writing, or by electronic communication."

§ 24-5-0.5-3. Such representations include, in relevant part:

> (1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.
>
> (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.
>
> \* \* \*
>
> (8) That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false.

§ 24-5-0.5-3(b).

A deceptive act is only actionable if it is either "uncured" or "incurable." *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 647 (Ind. Ct. App. 2004). An "uncured deceptive act"—which the Plaintiff alleges here—is defined as a deceptive act "with respect to which a consumer who has been damaged by such act has given notice to the supplier . . . but the supplier either fails to offer to cure within thirty days or does offer to cure but fails to cure within a reasonable time after the consumer accepts the offer." *Id.* (citing § 24-5-0.5-2) (internal quotation marks omitted); *see also id.* (noting that an intent to defraud or mislead is not an element to an uncured deceptive act). An "incurable defective act," on the other hand, is defined as an act "done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." § 24-5-0.5-2(a)(8).

Additionally, an action based on an uncured deceptive act may not be brought unless:

13

the consumer bringing the action . . . give[s] notice in writing to the supplier within the sooner of (I) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction,[11] or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction, which notice shall state fully the nature of the alleged deceptive act and the actual damage suffered therefrom, and unless such deceptive act shall have become an uncured deceptive act.

§ 24-5-0.5-5(a). If a plaintiff "fails to comply with the notice procedures then his suit can only be for an *incurable* deceptive act," which requires a showing of intent to defraud. *McCormick Piano & Organ Co., Inc. v. Geiger*, 412 N.E.2d 842, 849 (Ind. Ct. App. 1980) (internal quotation marks omitted) (further noting that "whenever a consumer neglects to avail himself of the notice provisions or else improperly invokes them, an additional element of proof is imposed on him.").

**1.** *Claim Against Newmar*

Newmar argues that dismissal of the Plaintiff's IDCSA claim is appropriate because (1) the Plaintiff failed to allege a deceptive act; and (2) the Plaintiff failed to satisfy the IDCSA's notice requirements for an uncured deceptive act.

The Court disagrees. In his Amended Complaint, the Plaintiff specifically alleges that he

> spoke directly with a manager at [Newmar] and read the [Newmar] website and [Newmar] brochures describing [Newmar] products, including the model which Plaintiff subsequently purchase[d,] and, in the course of that, representations were made by [Newmar] about the quality, performance, characteristics, and uses of

---

[11] A "consumer transaction" is defined, in relevant part, as "a sale . . . or other disposition of an item of personal property . . . a service, or an intangible . . . to an individual for purposes that are primarily personal, family, or household, or a solicitation to supply any of these things." Ind. Code § 24–5–0.5–2.

14

> owning an [RV] built by [Newmar]. Plaintiff had no reason to suspect that the representations were untrue but Plaintiff later discovered those representations were not true and [Newmar] knew and/or should have known that they were not true when made.

(Am. Compl. ¶ 20.) He goes on to allege that

> [b]ecause of the warranty-covered defects, Plaintiff notified [Newmar] and/or one if its authorized servicing agents of the numerous defects and delivered the motor coach into the possession of [Newmar] and/or one or more of its authorized servicing agents at their cost and/or expense beginning on the date of the sale and continuing approximately once every few weeks thereafter until the fire incident occurred.

(*Id.* at ¶ 45.) The Plaintiff asserts that he "provided [Newmar] and/or one or more if its authorized dealers with a reasonable number of opportunities and/or a reasonable amount of time to repair the vehicle but it neglected, failed, refused, or otherwise did not do so within a reasonable amount of time or a reasonable number of attempts." (*Id.* at ¶ 57.)

When viewing these allegations in a light most favorable to the Plaintiff, as the Court must, the Plaintiff has sufficiently alleged that Newmar made representations covered under § 24-5-0.5-3(b) (*id.* at ¶ 20), that the Plaintiff relied on such representations (*id.* at ¶¶ 53–54), and that Newmar received notice of the subject RV's alleged defects "beginning on the date of the sale" (*id.* at ¶ 45). At the summary judgment and/or trial phase of this litigation, the Plaintiff will be required to prove his IDCSA claim by showing, in part, that Newmar was given timely and written notice as to the nature of a deceptive act(s) and the actual damage suffered therfrom, *see, e.g., Captain & Co., Inc. v. Stenberg*, 505 N.E.2d 88, 95–96 (Ind. Ct. App. 1987) (finding that the plaintiffs letter constituted sufficient notice when "[t]he letter made it clear the [plaintiffs] relied on [the defendant's] expertise in agreeing to rebuild [their house], and that they expected the

[defendant] to comply with the representations it made"); but until then, the Court is reluctant to dismiss the Plaintiff's IDCSA claim based on these pleadings.

**2.** *Claim Against Magnum*

Magnum also seeks dismissal of the Plaintiff's IDCSA claim because (1) the Plaintiff failed to allege a deceptive act; and (2) the Plaintiff failed to satisfy the IDCSA's notice requirements for an uncured deceptive act.

In his Amended Complaint, the Plaintiff alleges that

> Magnum represented to [Newmar] and to the general public, which included this Plaintiff, that its devices such as this inverter were 'highly engineered devices' that would 'satisfy the world's growing need for safety the world's growing need for safety, energy efficiency' and more, and said that 'these are devices that improve safety, efficiency, and comfort for millions of people every day and are used in recreational vehicles and marine applications' among other things.

(Am. Compl. ¶ 29.) He further alleges that

> Magnum gave its written warranty to [Newmar] and made a written affirmation of fact or written promise to [Newmar] in connection with the sale of the inverter to [Newmar] and which related to the nature of the material or workmanship of the inverter and affirmed or promised that such material or workmanship was defect free or would meet a specified level of performance.

(*Id.* ¶ 28.)

Unlike the allegations related to Newmar—where the Plaintiff states that Newmar received notice of the subject RV's alleged defects "beginning on the date of the sale" (*Id.* at ¶ 45)—the allegations related to Magnum indicate that notice was limited to two letters, dated March 3, 2015, and May 12, 2015, respectively. (*Id.* at ¶ 22 ("Plaintiff communicated notice of the defective inverter to Magnum or its authorized representative

16

and/or agent on March 3, 2015[,] and May 12, 2015.")).[12] The March 3 letter advised Magnum about an investigation of a fire that "originated in the center area of the chassis where the Magnum Inverter is located" and requested that Magnum produce certain documents (Letter, Mar. 3, 2015, ECF No. 44-2); while the May 12 letter simply claims, in the context of a settlement offer, that Magnum is "liable for the many defects in the RV which culminated in the fire incident that was related to the inverter." (Letter, May 12, 2015, ECF No. 44-3). The Court agrees with Magnum that neither letter makes reference to a deceptive act committed by Magnum (i.e., a representation as to the subject matter of a consumer transaction, as described in § 24-5-0.5-3(b)).

Again, an action based on an uncured deceptive act may not be brought unless the consumer provides timely notice that "state[s] *fully the nature* of the alleged *deceptive act* and the actual damage suffered therefrom." Ind. Code § 24-5-0.5-5(a) (emphasis added). As the Indiana Court of Appeals has noted, "[t]he clear intent of the [IDCSA's notice requirement] is to provide and facilitate pre-complaint settlements of consumer actions wherever possible and to establish a limited period during which such settlement may be accomplished. This clear purpose may be effectuated only by a literal application of the notice provisions." *McCormick*, 412 N.E.2d at 849 (Ind. Ct. App. 1980) Accordingly, the Court finds that the Plaintiff has failed to give Magnum proper notice of a deceptive act.

Absent proper notice, the Plaintiff may only bring a suit for an *incurable* deceptive act, which requires an intent to defraud. *Id.*; *see also Vicom, Inc. v. Harbridge Merch.*

---

[12]Because the letters [ECF Nos. 44-2–44-3] are referred to in the Plaintiff's complaint and are central to his claim, the Court may consider the letters on Magnum's Motion to Dismiss. *Venture*, 987 F.2d at 431.

*Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) (finding that satisfaction of Rule 9(b)'s heightened pleading requirements for an allegation of fraud requires a plaintiff to state "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.") (internal quotation marks and citation omitted). Because the Plaintiff does not plead sufficient facts to show that Magnum's alleged representations were made with an intent to defraud, the Plaintiff's IDCSA claim against Magnum is properly dismissed without prejudice. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (stating that the general rule is that "the district court should grant leave to amend after granting a motion to dismiss.").

### C. Remedies (Revocation or Rescission)

Lastly, in his Amended Complaint, the Plaintiff requests, as an alternative prayer for relief, the equitable remedies of rescission and/or revocation of acceptance. (Am. Compl. 23–24.) Newmar maintains that neither remedy is available because North Trail RV is not a party to the proceedings.

The MMWA permits a consumer who is damaged by a supplier, warrantor, or service contractor to sue for "damages and other legal and equitable relief." 15 U.S.C. 2310(d)(1). However, the MMWA does not provide for any specific relief; but instead, provides a federal cause of action for state law breach of warranty claims. *Hoopes v. Gulf Stream Coach, Inc.*, No. 1:10–CV–365, 2014 WL 4829623, at *14 (N.D. Ind. Sept. 29, 2014); *Smith v. Monaco Coach Corp.*, 334 F. Supp. 2d 1065, 1070 (N.D. Ill. 2004)

("While revocation of acceptance is one of the remedies contemplated by [the MMWA], section 2310(d) does not actually authorize specific types of relief, but instead only creates a jurisdictional basis for traditional state law claims. [T]o determine whether a specific remedy is available, we must again consult state law.") (citations omitted).

Pursuant to the Indiana Commercial Code, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, [a] remedy may be had as provided in [Ind. Code § 26-1]." Ind. Code § 26-1-2-719(2). Of relevance here, § 26-1-2-608(1) permits a buyer to

> [R]evoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
>
> (a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
>
> (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances[;]

*see Pizel v. Monaco Coach Corp.*, 364 F. Supp. 2d 790, 794 (N.D. Ind. 2005) ("The [Indiana Commercial Code's] remedy of contract rescission, or revocation, functions to restore parties to their pre-contract positions.") (citing *A.J.'s Auto. Sales, Inc. v. Freet*, 725 N.E.2d 955, 967–68 (Ind. Ct. App. 2000)).

However, as courts in this Circuit have observed, the equitable remedies provided under § 26-1-2-608 are unavailable to a plaintiff who has only sued a remote manufacturer. *See, e.g., Skodras v. Gulf Stream Coach, Inc.*, Cause No. 3:08 CV 441, 2010 WL 145370, at *5 (N.D. Ind. Jan. 8, 2010) ("[T]he remedy of revocation of acceptance or return of all monies paid which [the plaintiff] identifies as being against the

manufacturer do not apply under the specific wording of the Indiana statutes."); *Pizel*, 364 F. Supp. 2d at ("[T]he code refer[s] to the word seller, not manufacturer, when talking about revocation, indicating that revocation was only intended against a seller."); *see also Skodras*, 2010 WL 145370, at *5 (noting that "the majority of courts addressing this issue" in other states "have concluded that without contract privity, a buyer cannot revoke a contract against a remote manufacturer.").

Notwithstanding the relevant case law, a party's request for certain remedies is not typically subject to attack under Rule 12(b)(6); and therefore, the Court will withhold any determination as to the Plaintiff's available remedies until a later point in this litigation.

## CONCLUSION

For the reasons stated above, the Court DENIES Newmar's Motion to Strike the Amended Complaint [ECF No. 40]; and as a result, ACCEPTS Newmar's Answer [ECF No. 42] to the Amended Complaint and DENIES AS MOOT Magnum's Motion to Dismiss [ECF No. 16]. The Court also GRANTS IN PART AND DENIES IN PART Magnum's Motion to Dismiss the Amended Complaint [ECF No. 43]. The Plaintiff's IDCSA claim against Magnum (Count III) is DISMISSED WITHOUT PREJUDICE, with leave to refile if the Plaintiff is able to plead sufficient facts to successfully amend his complaint within 14 days of the date of this Order.

SO ORDERED on June 22, 2016.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION