UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| DANIEL CASTAGNA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 3:15-cv-249 JD |
| NEWMAR CORP., et al. | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Daniel Castagna alleges that his Newmar RV experienced a number of defects over its first year that were not timely repaired pursuant to a written warranty. Just after the one-year express warranty expired, the RV suffered extensive damage from a fire that Mr. Castagna claims was caused by a faulty inverter. On those bases, he asserts claims for breach of the express warranty and breach of the implied warranty of merchantability. The parties have filed multiple motions in preparation for trial.

In this order, the Court resolves the motion to strike opinions in two reports by Thomas Bailey, one of Daniel Castagna's retained experts. Mr. Bailey offers two opinions relevant to damages: the estimated cost to repair the vehicle after the fire damage, and the vehicle's actual value on the date of its sale in light of its defects. Mr. Bailey also opined as to liability that, while all of the vehicle's defects (prior to the fire) were eventually repaired, they were not all repaired in a reasonable amount of time or attempts.[1] The defendants moved to strike each of those opinions, arguing that they do not satisfy Rule 702. The Court agrees.

---

[1] In another report, Mr. Bailey also opines as to the cause of the fire, but that opinion is subject to a different motion that the Court will address separately.

A.  **Legal Standard**

Rule 702 governs the admission of testimony by expert witnesses. Under that rule, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may offer an opinion if the following criteria are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

A court has a gatekeeping role to ensure that expert testimony meets these criteria. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834–35 (7th Cir. 2015). The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence that the testimony meets each of those elements. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). However, a court does not assess "'the ultimate correctness of the expert's conclusions.'" *Textron*, 807 F.3d at 834 (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Rather, a court must focus "solely on principles and methodology, not on the conclusions they generate." *Schultz*, 721 F.3d at 432 (quoting *Daubert*, 509 U.S. at 595).

B.  **Cost to Repair**

The Court begins with Mr. Bailey's opinion that the cost to repair the fire damage to the RV is $408,960. [DE 167-2 p. 4–11]. In support of that opinion, Mr. Bailey offered a high-level summary of the steps that would need to be taken to restore the RV to its initial condition after the fire. He explained that the "house portion" of the vehicle would have to be removed and

replaced, a new floor would need to be installed, and new air lines and wiring would need to be installed. As to how much that would cost, this is the entirety of Mr. Bailey's explanation:

> The estimated cost of repairs, on the above stated damage, which includes labor and materials, electronics replacement is $340,800.00 which is based upon 1800 hours, an hourly rate of $125.00 per hour, plus 20% of that total for hidden issues for a total of $408,960.00. The estimated replacement time was calculated on the removal and then reassemble. In other words, a twostep process. In the original construction of the motor coach there is no removal time, only a one step process, thence the construction time would be less.

[DE 167-2 p. 11].

Even assuming Mr. Bailey accurately identified the steps that a repair would require, this explanation utterly fails to show how Mr. Bailey determined how much they would cost. He does not explain, for example, how he determined that these repairs would take 1800 hours of work— the equivalent of forty-five weeks of fulltime work. His report does not even mention the cost of parts. While that figure can be deduced from his other calculations (1800 hours times $125 an hour is $225,000, so Mr. Bailey must have used $115,800 as the cost of parts to arrive at a subtotal of $340,800), the report gives no indication how he arrived at that number, or even what the parts would be. Counsel argued at the final pretrial conference that Mr. Bailey didn't need to look up the prices of any parts, since he just knows based on his experience how much they would cost. But even an expert basing his opinion on his experience must still explain how his experience leads to his opinion. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("Rule 702 does require . . . that the expert explain the methodologies and principles that support his opinion; he cannot simply assert a bottom line." (internal quotation omitted)); *Varlen*, 924 F.3d at 459 (explaining that an expert who based his opinion on his experience "still needed to show how his experience or expertise led to his conclusions"). Offering no more than a bottom-line that the unspecified parts would cost $115,800—a considerable sum—with no supporting explanation does not suffice. Similarly, the report offers no explanation for why Mr.

Bailey added another twenty percent for "hidden issues," or even, for that matter, how he concluded that $125 an hour is a reasonable rate for this work. Perhaps his expertise led to those conclusions, but if so, he does not say how.

These types of repair costs are not abstract issues that can't be further explained, either. It is inconceivable that a vehicle owner would send in their vehicle for even much more modest repairs without a greater understanding of how much time the various tasks would take, what parts would be required and how much they would cost, and what other costs would arise. Mechanics routinely provide those details even for repairs in the hundreds of dollars. It is not asking too much for an expert who opines that the cost would extend not only into the thousands of dollars, but hundreds of thousands, to give at least some insight into how he reached those figures. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (holding that an expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). The paucity of detail Mr. Bailey provided falls well short of showing that he used a reliable methodology and reliably applied it to the facts of this case in deciding how much the repairs would cost. Accordingly, his opinion fails to satisfy Rule 702, so the Court grants the motion to exclude his cost-of-repair opinion.

**C.    Market Value**

The Court next addresses Mr. Bailey's opinion as to the vehicle's market value, which he set forth in a separate report. Mr. Bailey begins his report with several pages of background on appraisals in general. He then summarizes the condition of the RV based on his inspections. In describing his methodology in this case, he lists sixteen factors that can affect the value of an RV, and he states that the "weight that is given to each of the factors above is based upon [his] 42 years of experience." [DE 167-1 p. 22]. He then opines that, given the extensive fire damage, the RV could only be sold at or around salvage value. For the same reason, he declined to contact

4

any dealers for offers to buy the RV, as he believed the vehicle would be unusable and that no reputable dealer would buy it for resale. Finally, Mr. Bailey opined that, in light of the various defects, the RV's true market value on the date of its sale would have been $25,000, a difference of $345,000 from what Mr. Castagna paid for it.

For some of the same reasons just discussed, the Court cannot find that this opinion satisfies Rule 702's reliability elements. Despite Mr. Bailey's invocations of his experience and his passing reference to various factors that he considered, the Court cannot ascertain how he arrived at a figure of $25,000. The report offers little explanation for how Mr. Bailey evaluated the factors he listed, and does not even mention many of them. Indeed, the report provides little more than a black box cloaked in references to experience, before announcing the market value, as if out of the blue. Mr. Bailey even acknowledges that his methodology usually requires contacting several dealers and asking what they would pay for the vehicle, but that he did not do that here. He explained that no dealers would purchase the RV because it could only be used for scrap, but that does not explain why he did not then seek salvage quotes instead. Nor does the report contain any analysis for how Mr. Bailey determined the salvage value of the RV. It does not explain, for example, what parts could be removed and sold, or for what price, or even how a salvager would go about deciding what to pay for it.

In support of this opinion, Mr. Castagna relies far too heavily on the argument that Mr. Bailey's opinion is the product of his experience instead of an objective science. To be sure, an "expert's testimony is not unreliable simply because it is founded on his experience rather than on data[.]" *Metavante*, 619 F.3d at 761. But neither does basing an opinion on experience excuse an expert from the need to show how he reliably brought that experience to bear in reaching his opinion. *Id.*; *Varlen*, 924 F.3d at 459; *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*,

395 F.3d 416, 419 (7th Cir. 2005) (stating that an expert cannot merely invoke "my expertise" as the basis for his opinion, and that if he "could or would not explain how his conclusions met the Rule's requirements, he was not entitled to give expert testimony"). It may also be true, as some courts have noted, that "appraisal is an art, not a science." *Pegg v. Nexus RVs LLC*, No. 3:16-cv-783, 2019 WL 2772444, at *5 (N.D. Ind. July 2, 2019). Even so, that doesn't allow an expert to invoke gut intuition as the basis for an opinion; the expert still must explain how the opinion is grounded in a reliable methodology. *See Zenith*, 395 F.3d at 419 (holding that an expert's reliance on "expert intuition" does not satisfy Rule 702); *Bullock v. Daimler Trucks N. Am., LLC*, No. 08-cv-491, 2010 WL 4115372, at *4 (D. Colo. Sept. 30, 2010) ("[E]ven where the methodology is an inexact one, the expert must 'show his work.'"). Here, Mr. Bailey's report strikes the Court as offering little more than background and hand-waving before announcing a bottom line untethered to any particular analysis.

Mr. Castagna also argues that Mr. Bailey has submitted basically the same report in other cases, in which his testimony has been admitted. *E.g.*, *Andersen v. Thor Motor Coach, Inc.*, No. 3:16-cv-830 (N.D. Ind. July 11, 2019) (Simon, J.); *Pegg v. Nexus RVs LLC*, No. 3:16-cv-783, 2019 WL 2772444 (N.D. Ind. July 2, 2019) (Simon, J.); *Hoopes v. Gulf Stream Coach, Inc.*, No. 1:10-cv-365, 2016 WL 1165683 (N.D. Ind. Mar. 25, 2016) (Lozano, J.). At the outset, though, a party has to show not only that the expert used a reliable methodology, but also that the expert reliably applied that methodology to the facts of the particular case. Fed. R. Evid. 702(d); *Metavante*, 619 F.3d at 761. That he has done so in other cases does not mean he did so in this case. Also, evaluating whether evidence satisfies Rule 702's elements requires district courts to make findings and exercise discretion. *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012) (noting that district courts have "wide latitude" in "determining both how to measure the

reliability of expert testimony and whether the testimony itself is reliable"). Two judges could thus consider the same facts and same arguments but come to different conclusions, without either judge erring.

The facts here are not the same, though, so the Court need not disagree with Judge Simon's or Judge Lozano's analyses to reach this result. Most notably, the nature of the damages here is different in kind than in the other cases Mr. Castagna cites. In those cases, the plaintiffs' claims were based on alleged defects in the RVs' characteristic functions, such as slide-out rooms that did not operate. The vehicles were still fit for use, even if in a reduced capacity or after repairs. Mr. Bailey could thus use the sale price of the RV as a starting point, then draw on his experience as to how the various components or their defects might affect a vehicle's value or how much they would cost to repair, among other factors, to reach an appraisal of the RV's value in light of the defects. *See Hoopes*, 2016 WL 1165683, at *9–10.

The theory of damages in this case is different. The alleged defect here is fire damage that Mr. Bailey opines renders the RV unusable and unable to be sold except for scrap, with defects so extensive that it would cost more to repair the RV than to buy a brand new one.[2] Mr. Bailey thus could not just assess the value of some components that have been rendered inoperable or the cost to repair them, and subtract that from the purchase price, as he may have done in other cases. Yet he offers no other explanation to bridge the gap to how he concluded that this RV would have been worth $25,000.

Mr. Castagna also notes that Mr. Bailey claims to have an average error rate of five percent. First, though, it is unclear how Mr. Bailey determined that rate. He testified at his

---

[2] Mr. Castagna's own brief distinguishes *Hoopes* on that basis: "In *Hoopes*, however, Mr. Bailey was not dealing with a fire damaged defective RV." [DE 179 p. 14].

deposition that this was based on his work in an RV dealership 30 years ago, during which time he thought his "failure rate" was usually around five percent. [DE 167-7 p. 17–19]. That explanation is rather vague and unconvincing. Second, even if that is true, it does little to establish that Mr. Bailey reliably applied a suitable methodology in this case. Guesswork is not admissible even if someone can show their guesses are usually pretty good; Mr. Castagna's burden is to show that Mr. Bailey did more than that and reliably applied a reliable methodology. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002) ("The focus of the district court's *Daubert* inquiry must be solely on principles and methodology, not on the conclusions they generate."). For all the reasons just discussed, the Court cannot find that Mr. Castagna met that burden. Therefore, the Court grants the motion to exclude Mr. Bailey's valuation opinion.

D.     **Vehicle Problem Analysis**

Finally, one of Mr. Bailey's reports includes a "Vehicle Problem Analysis." This portion of the report primarily consists of a spreadsheet that lists each of the alleged defects that were repaired. The spreadsheet states that all of the issues "seem to be fixed now." [DE 167-2 p. 13–20]. It also includes columns indicating, as to each issue, the reasonable number of attempts and number of days to fix the issue, along with a conclusion as to whether the issue was fixed within those parameters. After the spreadsheet, the report states that the vehicle spent 63 days out of service over a period of 252 days. It then concludes: "Was the time out of service considered unreasonable and has the number of attempts to repair substantially impaired or impeded the use or value of the motor home? The answer is yes." [DE 167-2 p. 21].

Again, the Court finds that these opinions are not adequately explained or reasoned so as to satisfy Rule 702. Since Mr. Bailey found that all of the alleged defects were repaired eventually, the point of Mr. Bailey's discussion is that Newmar failed to repair those defects in a reasonable amount of time or attempts. But Mr. Bailey has not adequately explained the basis for

8

those opinions. For example, the spreadsheet notes that the vehicle once spent 58 days in the shop (from October 3, 2013 to November 30, 2013), during which time 42 different defects were repaired. For each defect, the spreadsheet states the number of days it should take to fix the issue. And for every defect fixed during that period, the spreadsheet states that it was not fixed in a reasonable number of days. Yet adding the number of days Mr. Bailey stated each issue should take to be repaired produces a total of 77 days. Mr. Bailey offers no explanation for why he nonetheless believed that it was unreasonable for them to have been repaired in 58 days, or, for that matter, how he determined the amount of time each issue should take in the first place.

Beyond that, many of those items, and much of that time, had nothing to do with the warranty. Rather, another RV backed into Mr. Castagna's vehicle while it was parked at the repair shop, causing significant damage. That damage does not constitute a manufacturing defect subject to the written warranty, nor is a vehicle unmerchantable because another vehicle hit it after the sale. The repairs of that damage accounted for much of the time out of service during this period, yet Mr. Bailey does not appear to have accounted for that. His opinion about the total amount of time the vehicle spent out of service—for both warranty and non-warranty issues—is thus not responsive to the issues before the jury.

Mr. Bailey also calculated the percentage of time the vehicle was out of service, which he found to be unreasonable, but again the Court is left to guess at the basis for his opinion. The report states that the vehicle was out of service for 63 out of 252 days, for "25.6" percent time out of service. (That number may be a typo, as 63 is exactly 25 percent of 252.) It is not apparent why Mr. Bailey used 252 days as the denominator for that calculation, particularly since this was a one-year warranty. Nor does Mr. Bailey explain what percentage would be reasonable, or how

9

his experience led him to that conclusion. And again, much of that time was spent on repairs for a collision, which does not implicate the warranties.

Mr. Bailey further opines that two of the issues were not repaired within a reasonable number of attempts, as it took two attempts instead of one to repair them. In fact, for every issue in his spreadsheet, he indicated that "one" is the reasonable number of attempts to complete the repair. Yet the Seventh Circuit has held as a matter of law that even "two chances is not a reasonable opportunity to cure the defects[.]" *Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 622 (7th Cir. 2019). Mr. Bailey's opinion to the contrary is thus not helpful to the jury. For those reasons, the Court also grants the motion to exclude Mr. Bailey's manufacturing-defect opinions about whether the vehicle was repaired in a reasonable amount of time and attempts.

**E.     Conclusion**

The Court grants the motion to exclude Mr. Bailey's damages and manufacturing defects opinions. [DE 166].

SO ORDERED.

ENTERED:  February 3, 2020

                                                /s/ JON E. DEGUILIO
                                                Judge
                                                United States District Court